**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KELVIN RIJOS<br>*Plaintiff*,<br><br>v.<br><br>ROGERS MANUFACTURING COMPANY,<br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>) | 3:25-CV-01584 (SVN)<br><br><br><br><br><br>September 29, 2026 |

**RULING ON MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

In this employment action, Plaintiff Kelvin Rijos brings suit against Defendant Rogers Manufacturing Company, claiming that he was unlawfully terminated because of a disability. Plaintiff brings disability discrimination, failure to accommodate, and retaliation claims under federal and state law. Defendant moves to dismiss Plaintiff's failure to accommodate and retaliation claims, contending primarily that Plaintiff did not make a request for a reasonable accommodation and did not engage in protected activity with respect to his retaliation claims. For the reasons detailed below, the Court denies the Defendant's motion to dismiss in full.

## I. FACTUAL BACKGROUND

The Court recounts events based on the information contained in Plaintiff's amended complaint, ECF No. 31. While considering a motion to dismiss, the Court treats Plaintiff's factual allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff was hired by Defendant on or around January 21, 2019, as a full-time employee with the title "Jar Chipper."[1] Am. Compl., ECF No. 31 ¶¶ 5–9. On or about September 20, 2023,

[1] Although the amended complaint states Plaintiff worked as a "Jar Chipper," Plaintiff's later filings identify the job held as "Yard Shipper." Pl.'s Opp. to Mot. to Dismiss, ECF No. 37 at 4. The exact job title does not alter the substance of these allegations, but the lack of clarity does indicate a lack of care taken in preparing Plaintiff's filings.

Plaintiff sustained a serious injury to his right knee—a tibial plateau fracture— which prevented him from lifting, bending, kneeling, and climbing. *Id.* ¶¶ 10–12. The injury did more than impair mobility; Plaintiff also could not bear weight on his right leg. *Id.* ¶ 13. Without surgical intervention to realign the bone, Plaintiff would not be able to recover these functional abilities. *Id.* ¶¶ 14–15. Plaintiff notified Defendant of the fracture and need for surgery. *Id.* ¶¶ 17, 19.

Plaintiff made a request for medical leave related to the knee fracture. *Id.* ¶ 18. The injury was treated by Joshua Namm, MD, an orthopedic surgeon. *Id.* ¶ 21. Plaintiff gave Defendant a completed Connecticut Family and Medical Leave Act form, the "Certification of Health Care Provider for Employee's Serious Health Condition." *Id.* ¶ 20. In the form, Dr. Namm estimated that the Plaintiff would require continuous leave from September 20, 2023, until January 19, 2024. *Id.* ¶¶ 22–23.

Plaintiff underwent the surgery on an unspecified date, and Defendant was notified of the surgery. *Id.* ¶¶ 24–25. Following the surgery, Plaintiff was to undergo post-operative physical therapy two to three times per week, from November 27, 2023, for approximately six to twelve weeks, concluding by February 16, 2024. *Id.* ¶¶ 26–27. Dr. Namm completed a Connecticut Paid Leave Certification Form for Plaintiff concerning the physical therapy sessions, and Defendant was notified of the need for physical therapy treatment during the time period at issue. *Id*. ¶¶ 29–30.

Plaintiff recovered well from surgery, and Dr. Namm medically cleared the Plaintiff to return to work without physical restrictions on December 27, 2023. *Id*. ¶¶ 31–32. Defendant received notice of Plaintiff's medical release to work effective December 27, 2023, without physical restriction. *Id.* ¶ 33. The period from September 20, 2023, when Plaintiff's requested

leave was to have started, until December 27, 2023, when Dr. Namm cleared Plaintiff to resume work, covers fourteen weeks.

On December 27, 2023, the Defendant terminated Plaintiff's employment. *Id.* ¶ 34. The unemployment notice that Defendant sent to the Connecticut Department of Labor specified "lack of work" as the reason for ending Plaintiff's employment. *Id.* ¶¶ 35–36. Plaintiff alleges that this rationale for his termination was false, and that Defendant's termination of Plaintiff instead constituted disability discrimination, a failure to accommodate his disability, and retaliation for taking medical leave. *Id.* ¶¶ 37–42; *id.* at 5–11. In particular, he claims that Defendant terminated his employment without first communicating with him about "any purported concerns it had with the medical leave extending beyond twelve (12) weeks." *Id.* ¶ 38.

Plaintiff's amended complaint sets forth seven claims: (1) disability discrimination in violation of Conn. Gen. Stat. § 46a-60(b)(1); (2) failure to accommodate, in violation of Conn. Gen. Stat. § 46a-60(b)(1); (3) retaliation, in violation of Conn. Gen. Stat. § 46a-60(b)(1); (4) disability discrimination in violation of the Americans with Disabilities Amendments Act ("ADAAA")[2]; (5) failure to accommodate in violation of the ADAAA; (6) retaliation in violation of the ADA; and (7) Family and Medical Leave Act ("FMLA") discrimination/retaliation. Defendant moves to dismiss Counts Two, Three, Five, Six, and Seven, Plaintiff's failure to accommodate, retaliation, and FMLA claims. *See* Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 30; Def.'s Reply Br., ECF No. 40. Plaintiff opposes Defendant's motion. *See* ECF No. 37.

---

[2] In Counts Four, Five, and Six, Plaintiff invokes the ADAAA. The ADAAA was passed in 2008 and expanded the definition of disability set forth in the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. *See Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020); *Widomski v. State Univ. of N.Y. (SUNY) at Orange*, 933 F. Supp. 2d 534, 542 (S.D.N.Y. 2013). Except when referring to Plaintiff's filings, the Court refers to the statute as the ADA, because that is more widely known designation. *See Stanley v. City of Sanford,* 606 U.S. 46, 49 (2025) (referring to the ADA); *Lowell v. Lyft, Inc*., No. 24-2948, 2026 WL 2524261, at *1 (2d Cir. Aug. 27, 2026) (summary order) (referring to the ADA).

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id*. In undertaking this analysis, the Court must draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

For the reasons explained below, the Court denies Defendant's motion to dismiss in full.

A. Count Two and Five: Failure to Accommodate

In Counts Two and Five, Plaintiff brings claims for failure to accommodate under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(b)(1), and the ADA, respectively. The Court will not dismiss these Counts, as the amended complaint sufficiently alleges that Plaintiff made a request for reasonable accommodation.

"The ADA prohibits 'discriminat[ion] against a qualified individual on the basis of disability.'" *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(a)). Under the ADA, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability[.]" 42 U.S.C. § 12112(b)(5)(A). Likewise, the CFEPA prohibits discrimination in employment on the basis of disability, except in circumstances not applicable here, and requires employers to reasonably accommodate an employee's disability, *see Eldridge v. Hosp. of Cent. Conn.*, 230 Conn. App. 666, 675 (2025). "While the CFEPA defines disability more broadly than the ADA, the ADA and CFEPA apply the same standards for reasonable accommodation." *Green v. Cellco P'ship*, 218 F.Supp.3d 157, 167 (D. Conn. 2016).

To establish a prima facie failure to accommodate claim under either the ADA or the CFEPA, a plaintiff must show that: (1) he is a person with a disability within the meaning of the statute; (2) his employer was covered by the statute and had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of her job; and (4) his employer refused to make a reasonable accommodation. *McMillan v. City of New York*, 711 F.3d

120, 125–26 (2d Cir. 2013) (quoting *McBride*, 583 F.3d at 97); *Fox v. Costco Wholesale Corp.*, 918 F3d 65, 73 (2d Cir. 2019)); *Eldridge*, 230 Conn. App. at 675.[3]

An employee's request for accommodation triggers a duty on the part of the employer "'to investigate that request and determine its feasibility,'" which is known as the "interactive process." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185 (2d Cir. 2006) (quoting *Parker*, 260 F.3d at 338); *Eldridge*, 230 Conn. App. at 675. "An employer's duty to accommodate an employee's disability is ordinarily activated by a request from the employee, and the request must be sufficiently direct and specific to give the employer notice of the needed accommodation." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x. 16, 19 (2d Cir. 2015) (summary order) (quoting *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 129 (1st Cir. 2009)). A plaintiff's request for an accommodation matters "because, generally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *Graves*, 457 F.3d at 184 (internal punctuation omitted) (quoting 29 C.F.R. § Pt. 1630, app. at 363 (2003)). Courts have been clear that an employer cannot "'refuse [ ] to make [an] accommodation[ ],' . . . that it was never asked to make.'" *Dooley*, 636 F. App'x at 18 (quoting *McMillan*, 711 F.3d at 126); see also *Fox*, 918 F.3d at 73 (affirming grant of summary judgment where the plaintiff "never asked for an accommodation"); *Eldridge*, 230 Conn. App. at 675 ("A plaintiff who fails to initiate or to participate in the interactive process in good faith cannot prevail on an employment discrimination claim under CFEPA."). A reasonable accommodation can include a leave of absence. *See Thomson v. Dep't of Soc. Servs.*, 176 Conn. App. 122, (2017) ("a medical leave of absence is a

[3] In addition, at least under the ADA, the plaintiff must show "'the connections between (1) the failure to accommodate a disability, (2) the performance deficiencies, and (3) the adverse employment action.'" *Natofsky v. City of N.Y.*, 921 F.3d 337, 352 (2d Cir. 2019) (emphasis in original) (quoting *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 108 (2d Cir. 2001)); *see also Piligian v. Ichan School of Med. at Mount Sinai*, No. 1:17-CV-1975 (ALC) (SDA), 2020 WL 6561663, at *5-6 (S.D.N.Y. Apr. 7, 2020). No showing of discriminatory intent is required. *See Brooklyn Ctr. For Psychotherapy, Inc. v. Philadelphia Indemnity Ins. Co.*, 955 F.3d 305, 312 (2d Cir. 2020) (subsequent history omitted).

recognized form of accommodation"); *Green*, 218 F. Supp. 3d at 164 ("a disabled employee's request for leave to recover from a medical condition that causes a disability may, under certain circumstances, constitute a request for a reasonable accommodation under the ADA").

The only argument Defendant advances with respect to its motion to dismiss Plaintiff's failure to accommodate claims is that, in Defendant's view, Plaintiff's amended complaint does not allege that he requested a reasonable accommodation to extend his leave beyond December 27, 2023, when his doctor cleared him for return to work without physical restrictions.[4] Interpreting the amended complaint in the light most favorable to Plaintiff, the Court finds that it plausibly states that he requested reasonable accommodation for his disability, and thus the Court rejects Defendant's argument for dismissal.

The amended complaint alleges that Plaintiff made two requests for reasonable accommodation. First, Plaintiff alleges that, through the Certification of Health Care Provider for Employee's Serious Health Condition, Plaintiff's physician stated that Plaintiff would need continuous medical leave between September 20, 2023, and January 19, 2024. ECF No. 31 ¶¶ 20, 23. Additionally, Plaintiff submitted a Connecticut Paid Leave Certification Form stating that Plaintiff would require physical therapy sessions two to three times a week from November 27, 2023, until February 16, 2024. *Id.* ¶ 29. These are requests for reasonable accommodations, in the form of unpaid leave through January 19, 2024, and—drawing all reasonable inferences in Plaintiff's favor—time off to attend physical therapy appointments through February 16, 2024. That Plaintiff was ultimately cleared to return to work without physical restrictions on December 27, 2023, does not mean that his original requests for reasonable accommodation were necessarily cancelled or vacated, at least based on the allegations of the amended complaint. While Defendant

[4] As such, the Court does not address the other elements of failure to accommodate claims under the CFEPA and the ADA.

argues that it was reasonable to interpret Plaintiff's return to work without physical restrictions on December 27 as a cancellation of his original requests for reasonable accommodation—and that Plaintiff made no further requests for accommodation—the amended complaint does not suggest that Plaintiff's original requests were cancelled by his return to work. To the extent there is a question about how to interpret Plaintiff's return to work with the doctor's note on December 27, this is a factual dispute not suitable for resolution on a motion to dismiss.

At bottom, the amended complaint makes clear that Plaintiff requested reasonable accommodations and that, instead of engaging in an interactive process regarding his needs when he returned to work on December 27, 2023, Defendant promptly terminated him. Thus, Defendant's arguments for dismissal of Plaintiff's claims for failure to accommodate under the CFEPA and ADA fail.

The Court also rejects Defendant's suggestion that Plaintiff was required to reinitiate his request for reasonable accommodation when he returned to work on December 27, 2023, because he had exhausted the twelve weeks of leave afforded to him under the CTFMLA before that date. *See* ECF No. 30 at 7.[5] Again, this is an issue that requires further factual development, as it is not clear from the amended complaint alone that Defendant failed to approve Plaintiff's original request for leave through January 19, 2024—which far exceeded the twelve weeks allowed for under the CTFMLA. And in any event, Plaintiff alleges he *did* make a request for leave beyond twelve weeks, through his request for leave until mid-January 2024. Defendant cites to no

[5] CTFMLA is a state analogue to the federal FMLA. *Cendant Corp. v. Comm'r of Lab.*, 276 Conn. 16, 23 (2005). CTFMLA provides that, "an eligible employee shall be entitled to a total of twelve workweeks of leave during any twelve-month period" and specifies that leave can be taken for several reasons, including for the "serious health condition of the employee." Conn. Gen. Stat. § 31-51ll.

authority suggesting that a reinitiation of the original request is required under these circumstances.[6]

In sum, the Court declines to dismiss Counts Two and Five, alleging that Defendant failed to accommodate Plaintiff's disability under the CFEPA and ADA.

B. <u>Count Three and Six: Retaliation</u>

Next, the Court declines to dismiss Plaintiff's claims for retaliation in violation of CFEPA and the ADA.

To allege a *prima facie* case of retaliation under either the CFEPA or ADA, a plaintiff must plead: (1) that he participated in activity protected by the relevant statute; (2) that the defendant knew of the protected activity; (3) the defendant took an adverse employment action against the plaintiff; and (4) there is a causal connection between the protected activity and the adverse employment. *Ayantola v. Bd. of Trs. of Tech. Colleges*, 116 Conn. App. 531, 536 (2009) (CFEPA); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) (ADA). With respect to Plaintiff's CFEPA retaliation claim, Defendant contends that a request for reasonable accommodation—which Plaintiff advances as the protected activity in which he engaged—does not qualify as protected activity as defined by that statute.

To start, it is settled in the Second Circuit that reasonable requests for accommodation for a disability qualify as protected activity under the ADA. *See Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2002) ("plaintiffs do allege that they were seeking reasonable accommodation of Rose's disability—which constitutes protected activity under . . . ADA"); *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015) (citing cases). The

---

[6] At the oral argument on this motion, the Court queried defense counsel about whether the fact that Plaintiff's leave exceeded the twelve weeks allowed by the CTFMLA is a theory Plaintiff has pursued in discovery. Defense counsel reported that Plaintiff has not pursued this theory.

courts in the District of Connecticut have "more than once cited 'a request for reasonable accommodation' as one 'example of a protected activity' under the ADA." *Willoughby v. Conn. Container Corp.*, No. 3:11-CV-00992 (CSH), 2013 WL 6198210, at *15 (D. Conn. Nov. 27, 2013) (quoting *Bayonne v. Pitney*, 3:03–CV–00712, 2004 WL 213168 at *2 (D. Conn. Jan. 27, 2004)).

The question is admittedly less settled under the CFEPA. The statute provides that it is unlawful for an employer to discharge or otherwise discriminate against any person "because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in [certain proceedings]." Conn. Gen. Stat. § 46a-60(b)(4). Defendant cites to *Setkoski v. Univ. of Connecticut Health Ctr.*, No. HHD-CV-106012794, 2012 WL 2044802, at *4 (Conn. Super. Ct. May 10, 2012), in which the Connecticut Superior Court held that "[t]aking leave [to resolve a serious medical condition] was not an opposition to an unlawful employment practice and is not a protected activity" under the CFEPA, because a protected activity is "an action taken to protect or oppose statutorily prohibited discrimination." Some subsequent Connecticut Superior Court cases have come to the same conclusion. *See Dwyer v. Waterfront Enters., Inc.*, No. CV-126032894-S, 2013 WL 2947907, at *11 (Conn. Super. Ct. May 24, 2013) ("The few Connecticut courts that have considered the issue have concluded that § 46a–60(a)(4)[7] does not protect an employee who makes a request for a reasonable accommodation."); *Sheehy v. Big Y Foods, Inc.*, No. X-06-CV-126014260-S, 2012 WL 5860317, at *4 (Conn. Super. Ct. Oct. 31, 2012) ("The issue raised by the motion to strike is whether requesting reasonable accommodation for one's own disabilities qualifies as 'oppos[ing][a]

[7] At the time *Dwyer* was decided, the relevant provision appeared in Conn. Gen. Stat. § 46a-60(a)(4). It has since been relocated to Conn. Gen. Stat. § 46a-60(b)(4), including in the version of the statute that governs the time period at issue here.

discriminatory employment practice' for purposes of alleging retaliation under § 46a–60(a)(4). It does not.").

Other Superior Courts have taken the opposite view. *See Dunleavy v. Orange Veterinary Hosp., LLP*, No. CV-20-6106923-S, 2023 WL 1990042, at *9 (Conn. Super. Feb. 10, 2023) (collecting cases); *Stubbs v. iCare Mgmt., LLC*, No. CV-176069309-S, 2019 WL 645679, at *6 (Conn. Super. Ct. Jan. 18, 2019) (collecting cases), *aff'd in part and rev'd in part on other grounds*, 198 Conn. App. 511, 233 A.3d 1170 (2020); *Reddick v. Southern Conn. State Univ.*, No. CV-11-6021301-S, 2015 WL 9684444, at *12–13 (Conn. Super. Ct. Dec. 3, 2015). *Reddick* recognized that those Superior Court cases which do not recognize a request for reasonable accommodation as a protected activity under the CFEPA "stand in sharp contrast to federal precedent for retaliation claims" under the ADA. *Id.* at *13. In particular, the court acknowledged that the ADA—like the CFEPA—does not expressly include a request for reasonable accommodation as a protected activity, and yet federal courts and the Equal Employment Opportunity Commission have come to the "resounding conclusion" that a request for reasonable accommodation qualifies as protected activity under the ADA. *Id.* Given that the CFEPA is modeled on "its federal counterpart" and Connecticut has "sought to keep [its] state law consistent with federal law in this area," *id.* (citing *Ware v. State*, 118 Conn. App. 65, 82 (2009)), and that "[a]n interpretation of CFEPA that does not consider a request for a reasonable accommodation to be a protected activity would be inconsistent with the broad interpretation that [Connecticut] courts have afforded the CFEPA in other contexts," *Reddick* concluded that a request for reasonable accommodation qualifies as protected activity under the CFEPA. *Id.* at *14.

This issue has not been decided by the Connecticut appellate courts, based on the Court's research. And while Defendant suggests that an opinion from this District, *Payne v. PSC Industrial*

*Outsourcing, Ltd. P'ship*, No. 3:13-CV-355 (VLB), 2013 WL 6859920, at *9–10 (D. Conn. Dec. 30, 2013) supports its view, the Court disagrees. *Payne* distinguished *Setkoski* and the other Connecticut Superior Court cases holding that a request for accommodation is not protected activity under the CFEPA, and ultimately declined to decide the question, given that the plaintiff there had alleged he protested and opposed what he viewed as an unlawful employment practice, in addition to requesting an accommodation. *Id.* at *9.

Absent law from Connecticut's highest court, a federal court exercising supplemental jurisdiction over state law claims "has to predict how the state court would resolve an ambiguity in state law." *Donohue v. Hochul*, 32 F.4th 200, 207 (2d Cir. 2022) (quoting *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000)). The Court finds that *Reddick* is better reasoned that the other Connecticut Superior Court cases finding that a request for reasonable accommodation is not protected activity under the CFEPA, and more accurately reflects how the Connecticut Supreme Court would rule if faced with this question. The Connecticut Supreme Court has repeatedly looked to federal employment law to guide its interpretation of the CFEPA. *See, e.g., Kovachich v. Dep't of Mental Health & Addiction Servs.*, 344 Conn. 777, 802–04 (2022) (noting reliance on federal precedent to interpret CFEPA and using federal ADA cases to interpret it); *Curry v. Allan S. Goodman, Inc.*, 286 Conn. 390, 404 (2008) (holding that the CFEPA imposes the same duty to provide reasonable accommodation upon employers as the federal ADA); *Thames Talent, Ltd. v. Comm'n on Hum. Rts. & Opportunities*, 265 Conn. 127, 139 (2003) (holding federal law, specifically Title VII, provides guidance for Connecticut's employment discrimination laws); *Brittell v. Dep't of Correction*, 247 Conn. 148, 164 (1998) ("[W]e have looked for guidance to federal case law interpreting Title VII of the Civil Rights Act of 1964, the federal statutory counterpart to § 46a-60."). Given that a request for reasonable accommodation is considered

protected activity under the ADA, and that the CFEPA is "composed of remedial statutes" that are "to be construed liberally to effectuate their beneficent purposes," *Vollemans v. Town of Wallingford*, 103 Conn. App. 188, 197 (2007) (quoting *Comm'n on Human Rights and Opportunities v. Truelove and Maclean, Inc*., 238 Conn. 337, 355 (1996)), the Court finds that the Connecticut Supreme Court would be likely to qualify a request for reasonable accommodation as protected activity under the CFEPA. Where Connecticut appellate courts have diverged from federal employment law, it has been to interpret the CFEPA more broadly than its federal counterpart, to "offer[] greater, not less, remedial relief for the plaintiff." *See Reddick*, 2015 WL 9684444, at *14 (citing *Vollemans*, 103 Conn. App. at 199 (noting that although decisions of the U.S. Supreme Court are "the law of the land in regard to federal claims of discriminatory discharge, it is not a fortiori the appropriate standard for claims arising under Connecticut law")). Thus, the Court believes the Connecticut Supreme Court would view a request for reasonable accommodation as protected activity under the CFEPA.

Accordingly, the Court holds that Plaintiff has adequately pleaded that he engaged in protected activity, for purposes of his CFEPA retaliation claim in Count Three. And as to both Counts Three and Six, the Court rejects Defendant's argument that Plaintiff failed to request reasonable accommodation, for the reasons explained above with respect to Counts Two and Five. Thus, Counts Three and Six will not be dismissed.

C. Count Seven: FMLA Retaliation

Finally, the Court declines to dismiss Count Seven, for FMLA retaliation.[8]

[8] Although titled as a claim for FMLA "discrimination/retaliation" in the amended complaint, Plaintiff's counsel conceded at oral argument that this claim is solely one for FMLA retaliation.

Defendant's sole argument for dismissal of Count Seven is that Plaintiff's factual allegations in the amended complaint indicate only that he took leave under the CTFMLA, so he should not be permitted to bring a claim under the federal FMLA.

Under the FMLA, an eligible employee is entitled to 12 weeks of unpaid leave if a serious health condition that makes the employee unable to perform the functions of their position. *See* 29 U.S.C. § 2612(a)(1)(D). At the end of that time, FMLA provides the right of the employee to return to their former position, or an equivalent one. 29 U.S.C. § 2614(a). To state a *prima facie* claim for FMLA retaliation, a plaintiff must allege that (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).

When an employee makes a first request for leave under the FMLA he "need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.302(c); *see also Basso v. Potter*, 596 F. Supp. 2d 324, 338 (D. Conn. 2009) ("An employee need not expressly notify his employer that he is taking leave under the FMLA; it suffices that the employee supply a FMLA qualifying basis for his leave."). All that is required as "at least verbal notice" sufficient to make the employer aware that the employee needs FMLA-qualifying leave. 29 C.F.R. § 825.302(c). Once the employer has been notified of this need, "[a]n employer is responsible for designating leave as 'FMLA-qualifying, and for giving notice of the designation to the employee.'" *Larose v. Am. Med. Response of Conn., Inc.*, No. 24-962, 2025 WL 1524053, at *1 (2d Cir. May 29, 2025) (summary order) (quoting 29 C.F.R. § 825.300(d)(1)).

Here, Plaintiff notified Defendant of his knee fracture and of the need for leave to address this serious medical condition, which is all that was necessary for him to later bring an FMLA

retaliation claim. ECF No. 31 ¶¶ 17–23. He further alleges that invoked his right to FMLA-qualifying leave. *Id.* ¶ 99. There is no requirement that Plaintiff have exhausted any administrative remedies before asserting an FMLA claim. *See Singh v. N.Y. State Dep't of Taxation and Finance*, 911 F. Supp. 2d 223, 239 n.4 (W.D.N.Y. 2012) (citing 26 U.S.C. § 2617(a)). Nor is there a requirement that an employee specifically invoke the FMLA to later claim its protections. *Santiago v. Butler Co.*, No. 3:08-CV-1297 (CSH), 2012 WL 527699, at *3 (D. Conn. Feb. 17, 2012) ("If an employee makes a request that substantively triggers the FMLA, the fact that he knows about FMLA rights and fails to mention those rights is not determinative."). The onus is on the employer to clarify whether FMLA leave is at issue. *Id.*; *see also* 29 C.F.R. § 825.302(c) ("[i]n all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken").

In sum, the Court agrees with Plaintiff that "[t]he mere fact that the plaintiff completed CT-FMLA paperwork does not mean that he only requested medical leave protected by the CT-FMLA." ECF No. 37 at 21. Accordingly, the Court declines to dismiss Count Seven, and Plaintiff may continue to pursue an FMLA retaliation claim.[9]

## IV. CONCLUSION

For the reasons described herein, Defendant's motion to dismiss is DENIED in full.

**SO ORDERED** at Hartford, Connecticut, this 29th day of September, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

[9] At oral argument, Plaintiff's counsel made clear that Plaintiff is not pursuing a CTFMLA claim. Thus, the Court does not address Defendant's arguments directed at such a claim.